```
_ FILED        _ LODGED
_ RECEIVED     _ COPY

      DEC 0 1 2023

CLERK U S DISTRICT COURT
    DISTRICT OF ARIZONA
BY_____ DEPUTY
```

**Joel Hanger**
1901 W. Madison St.
APT 624
Phoenix, AZ 85009-9516
Phone: (623) 692-3499
Email: me@proper.legal
Prop Per / Pro Se / Sui Juris

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

Joel Hanger, individual,

Stephanie Stephens, individual,

      Plaintiff(s),

vs.

State of Arizona; Lisa VandenBerg, Judicial Officer, Joseph Kiefer, Judicial Officer, James B. Morse Jr, Appellate Judicial Officer, Jennifer B. Campbell, Appellate Judicial Officer, Randall M. Howe, Appellate Judicial Officer, Robyn Schudel and Brian Schudel, husband and wife, state employees, Lisa Dodd, individual, Court Appointed Advisor, Claudia Work, individual, Best Interest Attorney, Rick Kilfoy, individual, Best Interest Attorney, Lynda Murden, individual, Court Appointed Advisor, Marc Grant III, individual, Counsel to Schudel,

Demetrius Kovacs, individual,

INDIVIDUALS, JUDICIARY, ENTITIES, OR CORPORATION I-X,

      Defendants.

COMPLAINT   CV-23-2498-PHX-JZB

( Fraudulent scheming,
  Illegal search and seizure,
  Unlawful detention of minor children,
  Theft and Embezzlement,
  Perjury and the Subornation thereof,
  Interference with Parental Custody,
  Intentional Infliction of Emotional Distress,
  Malicious Prosecution,
  False Reporting,
  Gross Negligence and Injunction,
  Dereliction of Duties,
  Mental Child Abuse )

Plaintiff, Joel Hanger, as and for his complaint against Defendants, alleges as follows:

## JURISDICTIONAL ALLEGATIONS

1. Plaintiff Joel Hanger (hereafter "Plaintiff" or "Hanger") at all times referenced herein resided in Maricopa County, Arizona.

2. Plaintiff challenges the constitutionality of Title 25, Arizona Revised Statutes and the Best Interest Factors as unconstitutional as to the First, Fourth, and Fourteenth Amendments.

3. Plaintiff challenges the constitutionality of the Judicial Immunity Doctrine as violation of the Third Article to the Bill of Rights.

4. At all times relevant to this complaint, "Child 1", "Child 2", and "Child 3" are minor children of Hanger and Robyn Schudel (hereafter "Schudel") and are so referred to in the Complaint to protect the children's identity.

5. At all times relevant to this complaint, "Child 4", is natural minor to Hanger and Stephanie Stephens (hereafter "Stephens").

6. At all times relevant to this complaint, "Child 5" and "Child 6" are minor children to Stephens and Demetrius Kovacs (hereafter "Kovacs").

7. Within the times of this complaint, the State was factually illegally detaining "Child 5" and "Child 6" from Stephens and Hanger due to fraudulent and factually found to be false allegations in unlawful dependency JD39289.

8. At all times relevant to this complaint, "Child 4" was never removed from Hanger and Stephens.

9. Defendant State of Arizona is a body politic of the United States of America.

10. Statute of limitations is currently tolled as to the Notice of Claim pursuant to the statutes surrounding WICP actions.

11. The State of Arizona caused events to occur subject to this complaint through both the Department of Child Safety ("DCS"), the Family Court Branch of Arizona Superior Court, and the Division One Court of Appeals.

12. Defendants Lisa VandenBerg ("VandenBerg"), Joseph Kiefer ("Kiefer"), James B. Morse Jr. ("Morse"), Jennifer B. Campbell ("Campbell"), and Randall M. Howe ("Howe") (collectively referred to as "JUDICIARY") at all times relevant to this complaint was, and upon information and belief are, Judicial Officers of the Superior Court and the Arizona Court of Appeals District One and caused events to occur in Maricopa County, Arizona out of which this complaint arose.

13. Defendant Lisa VandenBerg acted under color of law and without vested jurisdiction pursuant to A.R.S. 25-411(J), placed parenting time rights restrictions on Hanger despite not making any findings sufficient to justify state interference on Hanger's

2

parenting time Rights. Namely, the findings are void of any statutory language or even any evidence sufficient to meet the low standard of preponderance of the evidence.

1.  It is worth noting that Judge VandenBergs position may possible be viewed in light of "better safe than sorry" perspective as the fraudulent Dependency JD39289 had yet to be dismissed, though this dependency did not name Hanger as a party it circumvented Hanger's due process by naming him as a "found to be abusive" party despite no hearings, charges or naming of Hanger as a party, thus defrauding Judicial Officer VandenBerg as to the Facts, though this Complaint also shows how this defense may not be a valid and legitimate defense as VandenBerg still acted under color of law without any probable cause or clear and convincing evidence as is outlined in this Complaint.

14. Defendants Lisa Dodd, CAA ("Dodd"), Claudia Work, BIA ("Work"), Rick Kilfoy, BIA ("Kilfoy"), and Lynda Murden, CAA ("Murden"), at all times relevant to the Complaint, were appointed by JUDICIARY and thus acting under the color of law and caused events to occur in Maricopa County, Arizona from which this complaint arose.

15. Defendants Robyn and Brian Schudel, at all times relevant to the Complaint was and are State Employees through Buckeye Elementary School District and upon information and belief the Department of Social Security Administration, and caused events to occur in Maricopa County, Arizona out of which this complaint arose.

16. Every individual and named defendant is being sued for their misconduct and not because of the position they hold.

17. At all times relevant and referenced herein, each Defendant was acting both within their scope of employment and outside their jurisdiction within that scope when they caused events to occur in Arizona for which the Complaint arose.

18. Upon information and belief, the alleged acts of the above individual Defendants were done for personal gain and were all in some form or another engaged in knowingly and intentionally concealing material facts, making false and fraudulent findings on the record and intentionally and with malice violating due process rights with intent to deprive a parent and their children of their civil rights of access and family relations protected by the State and Federal Constitution under the Fourth and Fourteenth Amendments to the Constitution of the United States of America and pursuant to the State Statutes of Title 25 of the Arizona Revised Statutes.

19. Based on the findings, or in the case of vested jurisdiction, the lack of any sufficient Clear and Convincing Evidence, of the Superior Court's November 24, 2020 Orders, Filed and subsequent root cause of action in this Complaint, was factually void of any findings sufficient to vest the State with it's awesome power to Interfere with

3

Constitutionally protected rights, namely the fundamental and ancient right to rear ones children without state interference.

20. The factual basis for the illegal detention of Hanger's children from him was predicated upon the acts and omissions of D.C.S. agents subject to a civil suite active on the Court Calendar, CV2022-092486, Stephens vs. the State of Arizona which is tort malfeasance suite for the illegal detention of "Child 5" and "Child 6" in fraudulent dependency JD39289 which originated from Defendants Schudel and Kovacs and coached and mentally abused children, "Child 1", "Child 2", "Child 3", "Child 5", and "Child 6" at the hands of Schudel and Kovacs.

21. Notice of Claim at this juncture is unripe as a 42 U.S.C. § 1983 requires a matter to terminate in favor of Hanger and simply put, this is impossible as the fraud introduced from Schudel and Kovacs through the BIA and CAA has tainted and abrogated Hangers access to Justice and Equal Treatment under the law.

22. In committing the above reference and alleged acts, the above individuals have engaged in a fraudulent scheme to deprive the children in these matters from their rightful access to parents and unlawfully gain through false and material misrepresentation to the justice system and subsequently the gears of justice have been stifled and the fraud on the court has alienated Hanger from due process and a fair and impartial hearing and irreprably harmed minor children by unlawful and baseless "disruption of contact" of children to their lawful and rightful custodians.

23. The minimum jurisdictional amount established for filing the action has been satisfied

24. This Claim, classifies as a Tier 3 Action, pursuant Rule 26.2(b)(3) - Arizona Rules of Civil Procedure

25. This Claim is being brought within the Statute of Limitions of 3 Years for Fraud, which arguable could start accruing December 1, 2020, however, due to the fraud stifling discovery and Plaintiff's actual discovery of the factual collusion of Kovacs and Schudel being reallized and began accruing November 19, 2023 upon Schudel's providing of the documents factually exposing the fraudulent schemes as a factual basis for Claim.

26. A JURY TRIAL IS REQUESTED.

## SUMMARY

27. Defendants, intentionally, and with malice, without any findings of abuse, neglect, abandonment, nor imminent and serious danger to the children, without jurisdiction vested by statute, law, nor right, placed illegal supervised parenting time restrictions on Father's rights to "Child 1", "Child 2", and "Child 3" (collectively "Children").

28. The State used an insufficient standard when applying the law, namely, the State used a Preponderance of Evidence Standard to interfere with the Children's access to their Father. This low standard is not sufficient standard of evidence, Troxell V.

4

Granville and Santosky v. Kramer, which clearly and incontestably establish that the Standard of Law when applying custody matters and rights of parents and children is Clear and Convincing, while the "Best Interest of the Children" has yet to be fully given flesh as there is no clear definition in any statute or language from the legislatures of any state that clearly and unambiguously define the "Best Interest of the Children" that Plaintiff has been able to find.

29. The State, in this Complaint, has engaged in extortion and kidnapping.

30. The State is holding Hanger's children for ransom and despite nearly ten years of equal and joint custody and parenting time to the children, maliciously interfered the children without any evidence against Hanger.

31. The State, upon being informed through Judicial Notice on July 18th, 2021 that the "probable cause" presented by Schudel in the original matter was in fact fraudulent and illegally procured and that "Child 5" and "Child 6" were returned to Father's home to Stephens care and direction and subsequent lawsuit ensued.

32. The state refused to vacate the original orders despite the evidence and factual fraud that was perpetrated and imported into the case.

33. Father appealed the November 24, 2020 orders, however the fraud was too ingrained and the appellate JUDICIARY denied Father due process, ignoring the fact that there was no findings of abuse, neglect nor abandonment or serious danger to the children and prejudicial precluded because Father didn't include the record that they had nothing to review and DENIED father's arguments.

34. The Appeals judiciary denied Father Due Process by affirming an action where the State is granted, without statute nor legislative permission, to force a single individual, already found to be fit parent, to prove they're fit in order to have access to their children.

35. The State is biased and violating Father's due process rights and without any evidence to the contrary, issued writs contrary to the declared public policy of the state.

36. Furthermore, the state is allowing Fraud to stand on the record as Fact.

37. The State, and particularly the JUDICIARY Defendants are derelict in their duties to protect children's rights, parents rights and uphold the constitution and their oath of office.

38. The JUDICIARY is, at this point, immune from civil sanctions and suite, however, they are not immune from Injunctive Relief, for which Father is seeking immediate releif before the State causes further irreparable harm as to "Child 1", "Child 3", "Child 4", and "Child 5".

39. Irreparable harm due to the Defendant's actions has already been afflicted as to "Child 2" and "Child 6".

## FACTUAL ALLEGATIONS

5

40. Plaintiff incorporates all the above paragraphs as though fully set forth herein.

41. Upon information and belief this is a continuing torts claim, not a continuing damages claim.

    1. The original events giving rise to this Claim are not continuing effects, but are continuing torts, in that each act again renews the accrual of Claim, thus, because this has not terminated in Favor, nor can it terminate in favor of Plaintiff, given the stigma caused by the fraudulent events and their impact as to fraud upon the court prevalent in this matter.

    2. False reports are being continuously held against Plaintiff, continually violating his due process rights to a fair and equal trial, until the Court is ordered to vacate the fraud or at least provide a hearing for the fraud, Hanger can never receive truly equal justice under the law, in fact if a Hearing were had in the same venue as which the corruption is established, Hanger will never receive a due process hearing, that is, Hanger will never receive due process in Surprise Superior Court and Hanger is trapped in a cage of injustice and in a venue that is hostile and biased towards him due to the fraud.

    3. Hanger believes he is being punished in the venue appointed as he has prevailed and exposed multiple prevailing appeals cases and strikes against justices under the authority of the judges in surprise superior court and Hanger is being retaliated against for defending his rights and prevailing in part resulting in 3 abuse of discretion against surprise superior court justices.

42. Plaintiff is the parent of "Child 1", "Child 2", "Child 3", "Child 4", and the step parent of "Child 5", and "Child 6".

43. At all relevant times Plaintiff was in family court custody battle with his ex-wife Schudel in FC2012-070854.

44. At all relevant times, Stephens was in family court custody battle with her ex-husband Kovacs in FC2017-002028.

45. At all relevant times, pursuant to November 18, 2019 orders, FC2017-002028 ("Companion") and FC2012-070854 were considered companion cases and shared

information until the dissemination of the BIA, Kilfoy, and CAA, Murden, in Companion.

46. At all relevant times, pursuant to February 14, 2020 Companion Orders, the April 27, 2021 Companion Orders, and the July 15, 2021 JD39289 orders Stephen's was the sole legal decision making custodian and sole parenting time party in Companion.

47. At all relevant times, Hanger held joint legal decision making parenting time to the children until the Court succumbed to false reports and fraudulent scheming by the INDIVIDUALS acting under color of law, with the exception of Kovacs who has no color of law factor as a private citizen.

48. Schudel and Kovacs began scheming on or around May 24, 2019.

49. Hanger filed modification of support after, upon information and belief, Schudel filed false reports to D.C.S. alleging Hanger pulled "Child 2" out of the car window by the neck, which resulted in D.C.S. investigation and safety plan and the initial custodial interference and tortuous interference by the INDIVIDUALS.

50. Hanger entered into a binding agreement after contractually agreeing to sign the safety plan predicated upon the fact that it would not be used or counted against him.

51. Schudel, Stephens, and Hanger, present in the May 20, 2019 TDM meeting with D.C.S., all witnessed this event.

52. The Investigation was closed as unsubstantiated, yet JUDICIARY maintained these false facts on the record.

53. Schudel admitted no fear of safety of the children while in Hanger's care, yet continued to file, or cause to be filed, upon information and believe, 13 false reports to D.C.S. all of which have been unsubstantiated.

54. During the Modification of Custody proceedings of 2019-202 in FC2012-070854, Schudel continued to present false reports and fraudulent facts to the Court soliciting the support of Dodd and Work to affirm her fraudulent statements.

55. Dodd submitted one single report to the Court in which the advisor materially concealed facts from the D.C.S. Record.

56. Hanger filed, on May 29, 2020, petition to the superior Court for victims rights to review the D.C.S. Record unredacted pursuant to A.R.S. § 8-807(M).

7

57. The Court Denied review.

58. The Court, despite using the D.C.S. records through CAA Dodd, refused to provide Hanger with the evidence, violating his right to review all allegations against him and infringing on due process of law.

59. Hanger appealed the denial of A.R.S. § 8-807(M) and appellate court denied and Hanger remedied the alleged deficiencies in 1 CA-CV 21-0138 FC.  Supreme Court denied cert in CV-22-0173-PR.

60. Hanger petitioned for release of records again on December 9, 2022.

61. The Court again denied, despite the remedy to the alleged deficiencies.

62. Despite this, in a recent hearing for modification of Support, a deficient remedy for the fraud, the Court still allowed Schudel to present as fact, the false and fraudulent findings that Hanger abused his children which is factually false as the D.C.S. Records exonerate with clear and convincing evidence but even further, go on to show that the cause of the contention and high conflict that is damaging the children is in fact Schudel.

63. Despite this exculpatory evidence, the current JUDICIAL Officer not named in this matter at this point but reserved under unnamed parties, heard testimony and evidences on November 21, 2023.

64. The Judicial Officer made it clear she would NOT vacate any previous fraudulent orders and that I can exercise parenting time through supervision, I asked for the vacating of the fraudulent findings and asked if she would vacate them even with the 9 elements of fraud on the court necessary to prevail and she said she would not.  The current Judicial Officer Jillian Francis is in fact biased and tainted from the Fraud.

65. It is this level of corruption and fraud that Hanger is up against, when False Reports are made to authorities and these false reports are upheld as fact.

66. Hanger obtained factual evidence through discovery on November 13, 2023.

67. The evidence provided from Schudel included facebook communications corroborating the facts that Schudel and Kovacs were in fact coordinating D.C.S. strategies and false reports and even disclosed that they were having the chidlren file reports.

8

68. These facts were found to be true in JD39289 on July 15, 2021 when "Child 5", and "Child 6" disclosed to D.C.S., after being recovered and removed from Kovacs posession as they were kidnapped by Kovacs and picked up in Florida State in late May of 2020.

69. These facts also are proven to be true in the evidence provided by Schudel and the D.C.S. Records which have been refused to be disclosed to Hanger.

70. Hanger obtained the redacted records which indicate there are serious inconsistencies in the rulings of FC2012-070854 such that the children are being seriously mentally and emotionally damaged by the Defendants to the point that two of the six children may be suffering irreparable damage already and any delay will absolutely calcify the damage inflicted on the minor children the state has a duty to protect.

71. The November 24, 2020 Orders indicate the Court believed Hanger pulled Minor "Child 2" from the back of his vehicle window by his neck, yet denied any material findings that Father is abusive, which factually was true, yet despite this placed unlawful parenting time restrictions on Hanger.

72. The report numbers from Schudel's joining of Kovacs campaign of false reporting is numbers 1076263 and 1079270.

73. The Court appears to be hung up on these numbers as well, these are the same ones in which Schudel admitted and signed contractually that the safety plan would not be used against Hanger in a May 20, 2019 Team Decision Making Meeting, preserved and archived for evidence, yet the findings indicate they were not only used but appear to be the root basis and legs upon with the Court is standing to uphold it's unconstitutional ruling to custodial interfere with Father, a fit, non-criminal, non abusive parent found to be the best party and safest party for the children according to the D.C.S. Records which were also materially concealed by the CAA Dodd, BIA Work, and Schudel.

74. Despite knowing there was no danger to the children while in Hanger's care, Schudel continued to pursue and perjur testimony (again), Schudel factually filed false reports in 2012 and obtained a fraudulent and quashed false order of protection against father

with the express and factually admitted on the record purpose of keeping the children from Hanger.

75. Schudel somehow coerced or manipulated and fraudulently schemed with Dodd and Work to deprive the children of access to their Father and materially conceal facts and present fraudulent and known to be false facts to the Court to tortuously interfere with the children's best interest and rights of access to Hanger.

76. Upon information and belief Schudel filed, or caused to be filed through fraudulent misrepresentation to authorities who were known to be mandated reporters, false reports to D.C.S. Reports:

1. 676184 – 6/26/12
2. 787872 – 6/15/14
3. 1076263 – 5/6/19
4. 1079270 – 5/24/19
5. 1104247 – 11/05/19
6. 1113674 – 1/10/20
7. 1129476 – 4/25/20
8. 1137271 – 6/26/20
9. 10012425 – 2/18/21

77. Upon information and belief Kovacs' filed, or caused to be filed through fraudulent misrepresentation to authorities who were known to be mandated reporters, the following false D.C.S. Reports:

1. 954540 – 3/29/17
2. 962927 – 5/16/17
3. 1045503 – 10/20/18
4. 1050425 – 11/19/18
5. 1081922 – 6/14/19
6. 1094168 – 9/4/19
7. 1094171 – 9/04/19
8. 1119320 – 2/12/20
9. 1127234 – 4/06/20

78. The record of conversations between Kovacs and Schudel, provided in discovery from Schudel, reflects that Schudel was informed by Kovacs on May 24, 2019, that "Child 5" and "Child 6", were reporting that "Child 2" was NOT pulled out of the window by his neck but by his arms.

10

79. The D.C.S. Record corroborates this communication in their indication that "Child 2", when interviewed in private, outside the undue and coached influence of Schudel, indicated and reported that he was NOT pulled out by his neck but by his arms, and that he was NOT yelled at by Hanger, and that the other allegation from 1079270, alleging that Hanger's mother, whom Hanger, Stephens, and all the children, 1-6, in this matter, resided with Hanger's parents, Dave and Darla Hanger, Paternal and Maternal grandparents and step grand parents of all the Children in this matter.

80. Further material evidence was withheld as D.C.S. Records indicate their concern of the children being coached, and as found was in fact being coached by Kovacs, and Schudel's involvement has yet to be acknowledged.

81. Leading up to and even just days prior to the October final hearings in FC2012-070854, Schudel perpetrated factual custodial interference, and for reasons unknown was not sanctioned, nor given warning about custodial interference by the JUDICIARY, but rather, was rewarded and the court falsely and maliciously prosecuted Hanger for Mother's misconduct.

82. The November 24, 2020 ruling is not only clearly unconstitutional, it's a shock to the conscious, resulting in over 8 sworn affidavits testifying to the egregious and faith wavering results makes this judgment beyond egregious, for which Hanger can contrive no word sufficient in describing the abhorrent and deplorable actions of these alleged "professionals" and seeing those charged and sworn to uphold and protect the rights of the people trampling them underfoot like a pearl before the swine.

83. The State of Arizona, and the JUDICIARY especially, is derelict and negligent in the training of their pool of appointed Advisors and Attorneys who are appointed for the purpose of being disinterested and neutral parties, are not trained nor equipped for the level of fraud and deception incorporated in this conscious shocking case.

84. Defendants Dodd, Work, Kilfoy, and Murden, are derelict in their duties to investigate the collusion and fraud of Shudel and Kovacs and with respect to Dodd and Work, were well aware and intentionally defaming and biased against Hanger without any legal basis or reasonable cause.

11

85. Defendant's Kilfoy and Murdern were grossly negligent in their duties, passing to Companion false and fraudulent details of the case to Dodd and Work.

86. Kilfoy and Murden were discharged from Companion on Dec 11, 2019.

87. Once they were dismissed Dodd and Work did not do any further review or provide any further insight into Companion as Kilfoy and Murden had no more access to Companion.

88. It is at this juncture that Dodd and Work cemented their biased position and proceeded to defame and present false and fraudulent information to FC2017-070854.

89. Dodd and Work did not present the February 14, 2020 orders granting Stephen's sole legal decision making and parenting time rights to the children due to Schudel and Kovacs undue influence and fraudulent false reports to D.C.S.

90. Dodd and Work did not disclose that Kovacs was the hostile party and colluding with Schudel.

91. Dodd and Work continued to defraud the Court of the Facts of the case and prejudiced and biased Hanger.

92. Work went as far as to believe she had authority to Order Father around and tell him that he couldn't exercise parenting time on September 30, 2020 despite having no court order to do so.

93. The same night law enforcement was warning Work and Schudel that if she did not turn over "Child 2" that they would arrest her for custodial interference, due to the history and extant reports and need to solicit law enforcement to enforce Mother to turn children over for Hanger's parenting time.

94. Schudel on at least 4 accounts with Law enforcement, not counting the false reports resulting in deprivation of parenting time rights to Hanger throughout the proceedings, engaged in factual and intentional custodial interference, despite attesting she had no fear of the children's safety at Hanger's household.

95. As recently as November 21, 2023, Schudel maintained and presented perjured and fraudulent statements to the Court, with intention and malice to continue to deprive and custodially interfere with Hanger's rights and positive and beneficial influence to the children as his natural and intimately involved and positive Fatherly duties.

12

96. Schudel is a serious danger to the mental and emotional well being of the Children and her malicious and wrongful prosecution of Hanger is a serious mental, moral, and emotional danger to the children and they will suffer, and some have suffered, irreparable harm if the State is not corrected through Injunctive Relief and the Children are not granted adequate protection as right now, without rights that are unlawfully interfered with as to Hanger, the children lack a protective parent or authority as the state is derelict and Schudel and her seriously dangerous status to the children is negligent and abusive in her duties and possesses no known protective factors for the children but seeks to damage them intentionally through tortuous interference with their relationship with their Father, Hanger, a victim of fraudulent scheming and kidnapping and extortion by the state agents acting under color of law.

## COUNTS ONE, TWO, AND THREE
## UNLAWFULL SEARCH AND SEIZURE, UNLAWFUL DETENTION, AND DEPRIVATION OF RIGHTS UNDER COLOR OF LAW (18 $\S\S$ U.S.C. 241, 242)

97. Hanger motions for endorsement of the appropriate Attorney General pursuant to jurisdiction for potential recommendation for criminal prosecution of Defendant's under Federal Criminal Code of Conduct and Laws, namely 18 $\S\S$ U.S.C. 241, 242 and upon the ripened fruit civilly for 42 $\S$ U.S.C. 1983 as to all defendants.

98. Hanger challenges the doctrine of absolute immunity, not judicial immunity, as unconstitutional.

1. No human should have absolute immunity from culpability, this is contrary to the Bill of Rights and fair and equal treatment under the law.

2. If a judge acting maliciously and with clear negligence and outside their jurisdiction, causing an infringement upon a parties rights, they are no longer under judicial immunity and subject to law of torts for they lacked jurisdiction and the judicial immunity protection they were afforded under the statutory language vesting them jurisdiction is not present and they have acted under the color of law, such Hanger asserts is the purpose of 18 U.S.C. 242, however, like False

13

Reporting and other criminal laws, getting prosecution for the same is as pipe
dream as the alleged freedom purportedly protected by the constitution yet so
impossible to factually obtain in this matter as Hanger has been disenfranchised
and alienated from the American Dream.

99. Civil Law has no basis for which criminal sanctions can be rendered, Rule 92, Arizona
Rules of Family Law Procedure:

*(a) Applicability. This rule governs civil contempt proceedings in family law cases.*
*Its procedures and sanctions are in addition to the procedures and sanctions for a*
*child support arrest warrant under A.R.S. § 25-681 et seq.*

*(1) Civil Contempt. The court may use civil contempt sanctions under this rule*
*only for compelling compliance with a court order or for compensating a party*
*for losses because of a contemnor's failure to comply with a court order.*
*(2) Criminal Contempt. Contempt sanctions that punish an offender, or which*
*vindicate the authority of the court, are criminal in nature and are not*
*governed by this rule.*

100.                                 In this matter, Defendant VandenBerg and Kiefer
both exacted criminal punishment against Father for which they lacked jurisdiction.

1. In both the November 24, 2020 and all subsequent minute entries, hearings, and
conferences, VandenBerg and Kiefer have and continue to refuse to grant access to
the children despite no evidence Hanger is a danger, let alone serious danger, to
the children.

2. Kiefer is the JUDICIARY with the most culpability as he has seen first hand the
fraudulent impact and the fact the findings were fraudulent and has refused to
vacate the criminal sanctions unlawfully writ in this matter.

3. The state continues and to this day refuses to allow Hanger any unsupervised
contact with the children, furthering the damage the state is inflicting intentionally
on the children.

4. It may be hard to believe a judge who's charged with such care and sworn
protective facets upon the constitution, and even having served this country, would
willingly endanger their position and reputation is absolutely unbelievable, yet

14

here we are, a father who has committed no crimes, perpetrated no malice or misconduct in this matter, is being maliciously and wrongfully prosecuted by the state and for what appears to be a fraudulent scheme to continue to maintain power and control or in some other factor deny a party of their God Given Rights to raise their children, in their Faith and education and medical provisions, and with the rampant antisemitism Hanger believes one driving factor is discrimination against Hanger's Jewish heritage and his rearing of the children in the Jewish Culture.

101.                    In an Arizona Family Law proceeding, pursuant to A.R.S. 25-403(5) "5. The mental and physical health of all individuals involved." is a determining factor.

1. This statute, however, does not delineate the unilateral factor vs universal factor.

2. This statute is unconstitutional in its current language as it is overly broad, as it is factually being used as a basis to detain children from a parent without any specifics as to what the Court is searching for.

3. The statute is further unconstitutional as it allows a judge to deprive parents and children of their rights to their parents without any probable cause or harm factors.

4. Mental diagnosis are not factors that are vested by the constitution as valid reasons for the state to exercise jurisdiction over the sacred and constitutionally protected rights of parents.

5. The statute further allows a judge to make allegations from the bench, of mental and psychological facets, without any training, and deem a parent unfit without any probable cause, and force parents to prove they're fit to have access to their children, a clear case of constitutional infringement as no parent can be deemed unfit without a showing of clear and convincing evidence.

102.                    The statute as writ, however, does not provision for a unilateral search warrant of a parent, instead it has a defining and restrictive factor, that is, the clear and unambiguous language is that quantifier, *all.*

1. The mental and physical health of *all* individuals involved.

2. The court, pursuant to current case law, abuses this axiom and violates constitution when it deprives children of access to their parents based on their mental

15

conditions, or the allegation and overly broad assertions and subsequently forcing a parent to prove their fit based on allegations, a violation of due process.

3. Upon reading, Hanger believes this statute to mean that the court *may* issue search warrants for psychological evaluations of *all* parties, but not one specific party, as unilateral order of one party is unequal treatment under the law, especially with the facts that the requesting party is the hostile and false reporting party and the false reports levied by that party are the basis for their request for a psychological evaluation in the first place. It's a fox in a henhouse, pointing out that a fox is in the henhouse, eating all the chickens, and then blaming the chickens for being eaten by the perpetrator.

4. In this instant matter, JUDICIARY, not only drew a negative inference, it made a presumption against a fit parent and disregarded that fit parents deference afforded by the constitution.

5. While family court matters are supposed to be fair and impartial, the fact that parents often engage in perjury and misconduct, this case is one ever so clear, that Judges in family law errantly believe they have full jurisdiction to just throw the custody and familial relation of the parents and children around as weapons to enforce extortion and holding children ransom until a parent can overcome the prejudiced, biased, and unconstitutional orders.

6. This is simply not the case, there are boundaries and protective measures in place to prevent this kind of derelict judicial misconduct, it's called the constitution, and even with judicial immunity, judges do not have complete discretion and certainly, when you're talking about the best interest of children, disrupting custodial familiarity is factually seen as not in the best interest of the children absent clear and convincing evidence, as case law establishes:

> *Because § 25–409(E) affords "special weight" to "legal parents," whether Father is entitled to "special weight" does not turn on whether he is declared to be a "fit" parent, but on whether his parental rights have been terminated. § 25–401(4). And because they have not, Father is a "legal parent" whose visitation opinion is entitled to "special weight" under § 25–409(E).*

16

...

*Even if parental fitness were relevant here, we reject Mother's assertion that, although Father has not been adjudicated "unfit," he is presumptively unfit because the family court did not expressly find him to be a fit parent. A parent is either fit or unfit—there is no middle ground—and when "[t]here has been no adjudication of the issue of ... fitness," a person "is presumed to be a fit [parent]." Ward v. Ward , 88 Ariz. 130, 139, 353 P.2d 895 (1960) ; cf. Santosky , 455 U.S. at 760, 102 S.Ct. 1388 ("[U]ntil the State proves parental unfitness, the child and his parents share a vital interest in preventing erroneous termination of their natural relationship."). We therefore reaffirm what we have long held: a parent is presumed to be "fit" until he or she has been adjudicated unfit.*

*Friedman v. Roels (In re Marriage of Friedman), 418 P.3d 884, 892 (Ariz. 2018)*

7. This court lacked any evidence let alone clear and convincing, let alone preponderance, let alone probable cause.

8. This court did NOT find Hanger unfit, but rather, acted outside it's jurisdiction, applied inappropriate standards, exercised biased and all malice and untoward to Hanger and violated his rights to his children as they are refusing to allow Hanger any weight and Hanger is being muzzled like a lamb led to the slaughter.

9. While one could argue there was a "dependency" that dependency was factually false and fraudulent and the duty of the court is to vacate any rulings that imported such fraudulent false facts and restore the rights of the victim parent.

10. This court has refused and Count One, Two, and Three clearly shows the search and seizure of Hanger's children was factually illegal and outside the jurisdiction of the JUDICIARY and subsequently issued an unwarranted and illegal restriction of his parenting time rights, which was factually baseless and is a factual harm to the children, placing the judges in to a position, had they no immunity, of disrepute and in the reach of tortuous acts. Just how far out of jurisdiction does a judge need to be before they can be civil held accountable in a defamation or tort, certainly

17

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

once the superior federal courts order an injunction, a violation of this then becomes a civil tort and a contempt of court, placing their actions into a state of actionable suite.

103.                              Defendant VandenBerg acted with intentional malice, depriving Hanger of a fair and equal hearing under the law and punishing his children for his refusal to take an inequitable psychological evaluation and subsequently overstepping her jurisdiction and executing criminal sanctions in a civil matter.

104.      The malice does not end there, VandenBerg also prevent Hanger from access to exculpatory evidence and this material evidence was intentionally withheld from VandenBerg by Dodd, as Dodd read all reports available at the time from D.C.S.

1. On January 14, 2020, Dodd released her first and only report of the case, which was deficient, lacking of investigation into the fraud and colluding of Schudel and Kovacs, and materially concealing that Hanger was found by D.C.S. PhD staffed Doctor Hunt:

"Hunt believes the children are being pulled into the custody battle. He stated Joel and Stephanie's home is the safest from physical abuse due to the cameras and body cameras.", made and in the records on June 20, 2019, materially concealed from the Court and unavailable for the final hearing in October 2020 due to the extended delay of records from D.C.S. from the onset and impact of Covid-19 Pandemic.

2. Dodd further concealed the serious concern by D.C.S. that the children were being coached as discovered from the D.C.S. redacted reports Hanger received late in 2021, specifically twelve pages of reports indicate concern for coaching by Schudel and Kovacs.

3. Dodd further materially concealed that the allegations that "Child 2" was pulled out of window by his neck, was factually false as exposed by "Child 2" made on May 29, 2019:

"*In regards to allegations, "Child 2" stated his father pulled him out of the back of the car because "I did nothing wrong and McKinleigh was hitting me". He stated he sustained a red mark but no bruises. He stated his father*

18

*pulled him from from his arms. "Child 2" stated his father pulled him backwards out of the back of the car. "Child 2" reported that after that he went to father's home this weekend and 'it was boring, I laid in my room'. He reports that and are with their father this summer, so with and his sisters it is boring. "Child 2" denies that anything scared him at father's house. He reports that he does not feel safe all the time because his father yells at his [redacted] "Child 2" stated that his father Joel does not yell at him."*

4. This report was clearly incorporated and utilized in Dodd's report, however, these material facts were intentionally withheld from the Court, nor did VandenBerg want to see the evidence, as VandenBerg was acting as a judge but not acting with jurisdiction as a judge does not have discretion to ignore exculpatory evidence or to materially withhold evidence being used against a party from being seen by the party but allowed to be used by an accuser, this is contrary to due process and equal protection and treatment under the law.

105.     Hanger brought the May 2019 Petition to Modify Child Support and Custody on a good faith basis, with the following allegations:

1. Schudel was colluding with Kovacs to make false reports and harm the children.

2. Schudel and Kovacs were mentally and emotionally abusing the children and factually custodially interfering with them.

3. Hanger petitioned the Court as the professional and jurisdictional due process necessary to protect the children.

4. The Children were subsequently unlawfully detained from Hanger due to the fraud and the egregious misconduct of all the parties involved in this, especially the malicious and wrongful prosecution brought about by Schudel, Kovacs, Dodd, and Work, and the evidence and proof necessary to show such harm and fraud have been stifled by abusive discovery processes by Schudel and the fraudulent scheming of the alleged professionals in this matter.

106.     JUDICIARY subsequently illegally searched and seized Hangers children and upheld such illegal detention through the Court of Appeals.

1. Appellate JUDICIARY, Morse, Campbell, and Howe, egregiously support a contradictory and fraudulent ruling.

19

2. Namely, these judges agree that it's within the Courts discretion to withhold children absent evidence to the contrary and contrary to the best interest of the children and contrary to the state statutes.

3. The Arizona and United States constitutions both have parents rights provisions and probable cause is the standard upon with the Court has jurisdiction to exact it's awesome interference power.

4. Absent probable cause, the State must provide frequent, meaningful, and continuing contact and as much as feasible and for lack of evidence to the contrary, has a duty to ensure both parents are free to exercise those rights.

5. When recalcitrant parents are encountered it is up the court to determine if harm is existing and to which parent the recalcitrance is happening.

6. Only upon a showing of harm (ARS 25-411(J)) can the court have authority to place parenting time rights restrictions, See Hart v. Hart:

1. ¶ 19 Under A.R.S. § 25-410(B), in addition to a best interest test, the standard requires the court to find that "in the absence of the order the child's physical health would be endangered or the child's emotional development would be significantly impaired." Section 25-411(D) likewise provides:

The court may modify an order granting or denying parenting time rights whenever modification would serve the best interest of the child, but the court shall not restrict a parent's parenting time rights *unless it finds that the parenting time would endanger seriously the child's physical, mental, moral or emotional health.*
(Emphasis added.) In this case, the court expressly stated the standard it applied to be a best interest standard. This was error. The court was required to determine that the restrictions on parenting time "would endanger seriously the child's physical, mental, moral or emotional health," under A.R.S. § 25-411(D) or that "the child's physical health would be endangered or the child's emotional development would be significantly impaired" under A.R.S. § 25-410(B). As we noted earlier, this does not require *finding on the record.* The error here is that the wrong standard was applied. Had the court not stated the standard incorrectly, we would have presumed that it applied the appropriate standard and then considered whether there were facts to support that determination. *See Fuentes*, 209 Ariz. at 58, ¶ 32, 97 P.3d at 883. Because the wrong standard was applied, we vacate the order concerning supervised parenting time and remand for application of the proper standard to the facts here.
*Hart v. Hart*, 220 Ariz. 183, 188 (Ariz. Ct. App. 2009)

20

107.    Hanger is seeking Injunctive Relief order from this Court to the Surprise Superior Court of Arizona, or any Arizona Court, to cease from continuing this egregious campaign and tortuous interference of Father's parenting time rights and rights to legal decision making. Upon this case text Hanger asserts and alleges that the Court may issue further unconstitutional orders upholding the fraud and upholding unconstitutional limitations to Hanger's rights to his children:

*37 Section § 25–409 provides that in determining whether visitation is in a child's best interests, and in addition to the "special weight" requirement discussed above, the trial court must "consider all relevant factors includ-ing:"*

*1. The historical relationship, if any, between the child and the person seeking visita-tion.*
*2. The motivation of the requesting party seeking visitation.*
*3. The motivation of the person objecting to visitation.*
*4. The quantity of visitation time requested and the potential adverse impact that visi-tation will have on the child's customary activities.*
*5. If one or both of the child's parents are deceased, the benefit in maintaining an ex-tended family relationship.*

*§ 25–409(E). Friedman v. Roels (In re Marriage of Friedman), 418 P.3d 884, 893 (Ariz. 2018)*

108.    Without this Court's intervention and Injunctive Relief, the Chilren are going to continue to be harmed by the Court's fraudulent decision and error in facts and law and egregious misconduct and Hanger and His Children's rights and mental and emotional well being will continue to be in serious danger of harm due to Schudel's misconduct and the Court's engagement and joinery to this egregious child abusing case.

## COUNT TWO

### THEFT AND EMBEZZLEMENT AND BREECH OF CONTRACT

109.    For the past 10 years, Schudel has engaged in perjury and fraudulent scheming in order to steal and embezzle the children's money through State sanctioned child support proceedings.

110.    Prior to the November 24, 2020 orders, Schudel had embezzled over $70,000 of the children's financials from Father's income through fraudulent concealment and misrepresentation of the facts of childcare costs, intentionally depriving the Court through malicious and intentional abuse of discovery. Relying on the

21

lackadaisical rules of evidence afforded family law cases and the fact that Mother's theft has deprived Father of financial capabilities to represent himself in her high conflict hostile misconduct.

111.    Hanger has petitioned, and in biased fashion, the Court has denied Hanger's due process on the controversies, the Index of Record is rife with Hanger's petitions and motions to protect the children and Hanger from Mother's misconduct only to be denied and told he could have litigated in the last hearing, which factually was impossible as Mother's fraudulent stranglehold is akin to a Disney movie spell or incantation that has egregiously seduced and swooned the incompetent JUDICIARY allegedly sworn to protect the rights they're defiling and dereliction thereof.

112.    The factors of theft due to Schudel's fraud and inexcusable neglect is tolling and accruing as this is writ, as the November 24, 2020 child support factors were factually and provable false, and the illegal detention fo children also factors into those calculations a proper amount of child support should be re-calculated with the fraudulent factors and the equal treatment under the law factors, namely, child support should be attributed to Hanger as to Mother's fraud and arrears should be sanctioned for Schudel's misconduct and an immediate order to cease the theft and fraudulent misrepresentation should be seen as not just a contempt charge but furthered as a deadbeat parent clause as it's not just malicious to steal, it's egregioius to place illegal burden upon a party and then demand them to pay what they already have on threat of treating them as a deadbeat parent.

**COUNT THREE**

**INTERFERENCE WITH PARENTAL CUSTODY (A.R.S. § 13-1302) AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

113.    Defendants Schudel, husband and wife, on but not limited to the following dates, factually withheld "Child 2" and "Child 3" and on occasion "Child 1" during fraudulent false report investigation periods of D.C.S.

1.  On May 19, 2019 – Schudel withheld "Child 2" from Hanger without legal basis to do so.

2.  On May 22, 2019 – Schudel withheld "Child 2" and "Child 3"  from Hanger without legal basis to do so.

3.  September 27, 2020 – Mother withheld "Child 2" from Hanger without legal right to do so.

4. September 30, 2020 – Mother withheld "Child 2" from Hanger without legal basis to do so. Mother was warned she would be arrested if she continued to do this due to the previous warnings she had received from 2019 to that day.

114.    Defendant Marc Grant III ("Grant") suborned perjury on many counts in which he supported Schudel's fraudulent misrepresentation to the Court, in cases following questioning he knew was false to solicit fraudulent misrepresentation, in one such case in 2017 and other child support proceedings Grant made testimonial statements such as with respect to exposing Schudels 2012 false report to the Courts, that it was ok for her to perjur and submit fraudulent testimony "given the circumstances".

115.    Grant's most recent subornation of perjury is in his incorporation and support of the false reports presented to the Court, namely the fraudulent and found to be false reports made claiming Hanger pulled "Child 2" from the car by his neck.

116.    Grant is well aware of his client's perjury history as well as supportive of this, a violation of code of conduct and ethics let alone a criminal conspiracy to deprive the children of access to their father through material misrepresentation and known to be false and fraudulent allegations.

117.    Schudel acknowledged in a May 20, 2019 TDM meeting that she had no safety concerns for the Children while at Hangers.

118.    Schudel also acknowledged in the same meeting that she was advising "Child 2" that he could choose if he wanted to go to visitation with Hanger, coaching the child and causing a divisive mindset that was fed and grew from that point on to the point that "Child 2" became violent against Hanger due to Schudel's undue and intentional custodial interference and mental abuse through coaching of the minor child.

119.    Schudel also entered into a verbal contract that the safety plan established in the TDM to allow the D.C.S. agents time to finish their investigation, which was unsubstantiated just like the rest of the other 8 egregious and false reports made, upon information and belief, because of Schudel, with knowledge that her reports were false.

120.    Schudel engaged in mental child abuse and false reporting to D.C.S. as well as fraudulently using the same false allegations, known to be false, to maintain and

23

uphold a wrongful institution of civil proceedings against Hanger which has resulting in theft and embezzlement of the children's financial resources.

121.     Schudel has no regard for civility and has been impeached multiple times by Hanger in the proceedings, only to be given special favor and partiality in what should be a fair and impartial trial.

122.     Schudel's actions are not just criminal in nature they are fraud upon the court per se, not just by some throw of the dice or circumstantial evidence, her fraud is so extensive in nature it has detrimentally influenced judges and court appointed officials to maliciously prosecute an innocent parent.

123.     Schudel's actions constitute an Intentional Infliction of Emotional Distress against the children as well as to Hanger. Schudel knows and has testified Hanger is a good Father and loves his children, which further exacerbates the aggrevating factors. Schudel intentionally and with full knowledge knows she is intentionally interfering with Hanger's love and effection and inflicting emotional distress.

124.     In 2020, Hanger had to take 12 weeks unpaid leave of absense and go through counseling to deal with the, Kovacs kidnapped children and the impending litigation and fraudulent and false reports of Schudel and synchronous attacks from Kovacs false reporting and coaching of the children to make false reports.

### COUNT FOUR, FIVE, SIX, SEVEN, EIGHT
### MALICIOUS PROSECUTION, FALSE REPORTING, GROSS NEGLIGENCE, DERELICTION OF DUTIES, MENTAL CHILD ABUSE,

125.     Defendants Schudel, Grant, Kovacs, Dodd, Murden, Kilfoy, Work all engaged in malicious prosecution of Hanger and made false misrepresentations to the Court of the facts of the case, with malicious intent and prosecution (42 U.S.C. 1983), engaging in intentionally false reports to D.C.S. and the Court and causing a mental and emotional abuse of the children with all malice and known harm and intentional disregard for the law.

126.     Hanger hereby incorporates these arguments as succinct and parallel to each other in allegation and reserves right to amend this complaint as necessary.

**WHEREFORE**, Plaintiff prays that judgment be entered in his favor and against Defendants and each of them as follows:

24

1. For injunctive relief to prevent imminent and irreparable harm to children as to Judical Officer VandenBerg, Kiefer, and applicable to Superior Court of Arizona and any officiating judicial officer to cease and refrain from affirming any further fraudulent false reports of abuse as to Hanger;
2. Injunctive Relief as to Schudel to cease defamatory and false statements that Hanger is abusive;
3. For compensation and consequential damages;
4. For attorney's fees and costs;
5. For punitive damages; and
6. To grant any such further relief the Court deems necessary or just under the circumstances.

UNDER FEDERAL RULE OF CIVIL PROCEDURE 11, BY SIGNING BELOW, I CERTIFY TO THE BEST OF MY KNOWLEDGE, INFORMATION, AND BELIEF THAT THIS COMPLAINT: (1) IS NOT BEING PRESENTED FOR AN IMPROPER PURPOSE, SUCH AS TO HARASS, CAUSE UNNECESSARY DELAY, OR NEEDLESSLY INCREASE THE COST OF LITIGATION; (2) IS SUPPORTED BY EXISTING LAW OR BY A NONFRIVOLOUS ARGUMENT FOR EXTENDING, MODIFYING, OR REVERSING EXISTING LAW; (3) THE FACTUAL CONTENTIONS HAVE EVIDENTIARY SUPPORT OR, IF SPECIFICALLY SO IDENTIFIED, WILL LIKELY HAVE EVIDENTIARY SUPPORT AFTER A REASONABLE OPPORTUNITY FOR FURTHER INVESTIGATION OR DISCOVERY; AND (4) THE COMPLAINT OTHERWISE COMPLIES WITH THE REQUIREMENTS OF RULE 11.

RESPECTFULLY SUBMITTED THIS DECEMBER 01, 2023,

/s/ Joel M. Hang

Joel Hanger
Plaintiff, Pro Per

Stephanie Stephens
Plaintiff, Pro Per

25

1　The original of the foregoing was efiled

2　this 01 day of December 2023, to:

3　Clerk of Court

Maricopa County Superior Court

4　14264 W. Tierra Buena Lane

5　Surprise, AZ 85374

6　And a copy emailed/delivered to:

7　Marc Roger Grant Jr.

Strong Law

8　11111 N. Scottsdale Rd. Ste 245

Scottsdale, AZ 85254

9　marc@stronglaw.legal

Attorney(s) for Petitioner

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

26